## THE NATIONAL.

## THE MARMOR.

## THE RUSSELL NO. 2.

## THE COASTWISE NO. 2.
### Nos. A–17243, A–16992.

District Court, E. D. New York.
June 4, 1946.

Forrest E. Single, of New York City, for Seaboard Great Lakes Corporation.

Mahar & Mason, of New York City (Frank C. Mason, of New York City, of counsel), for Suburban Petroleum Transport, Inc., and Coastwise Barges, Inc.

Alexander & Ash, of New York City, for Russell Bros. Towing Co., Inc.

GALSTON, District Judge.

These two libels were tried together and though no order of consolidation was entered, it was agreed that the findings and conclusions would apply to both causes.

On November 20, 1943, the tug Marmor, with the Coastwise barge No. 2 in tow on the tug's starboard side, left College Point bound for Mt. Vernon.

The tug Russell No. 2, bound for Flushing, had a barge, the National, on the port hawser, a scow on the starboard hawser, and a scow astern of the port hawser boat.

About 5:15 P. M. in Flushing Bay, the Coastwise No. 2 and the National came in collision. Each tug ascribes fault to the other.

The bow of the Coastwise No. 2 extended beyond the stem of the Marmor. It is 115 feet in length; the Marmor 49, and the stern of the tow boat was overhung by the stern of the barge. The day was clear and the wind light. It was agreed that there was no channel marked from College Point to the Flushing Channel. The Russell tow had a hawser from the tug to the head pier of about 35 or 40 feet. Apparently the Russell tow was proceeding more rapidly than the Marmor.

As the vessels approached on crossing courses, the Marmor blew one whistle when about 500 feet from can buoy C–3 which was ahead on the easterly side of Flushing Channel. At that time the Russell tow was 1000 feet away from the can buoy. The Russell answered with a one whistle signal. As the Marmor approached the buoy she changed her speed and stopped. The Russell kept coming on for a while and then also stopped or slowed down, and on approaching the can buoy swung slightly to the port side of the channel. The tide also was a factor which affected the Russell's tow, causing it to· veer somewhat to port. Then the collision occurred, the starboard corner of the Coastwise No. 2 coming against the corner of the National.

■ The Russell No. 2 was proceeding on a straight reach of the channel and at about four miles per hour. As has been said, the Marmor was proceeding at a slower rate, for the waters in which she was traveling were unmarked and shallow on both sides. Moreover, as has been indicated, she had to make a hairpin turn around the can buoy. The Russell No. 2 was the privileged vessel, the Marmor the burdened vessel.

The controlling principle to be applied in this case is the starboard hand rule which requires:

"Every steam vessel which is directed by these rules to keep out of the way of another vessel shall, on approaching her, if necessary, slacken her speed or stop or reverse." 33 U.S.C.A. § 208.

■ It is conceded that the Marmor was the burdened tug and the Russell No. 2 was the privileged vessel. It seems reasonably clear from the testimony that the Marmor did not keep out of the way of the Russell tug. After the exchange of whistles, the Marmor continued ahead to a point about fifty feet from the buoy until she reversed her engines. Such was the admission of Malm, the master of the Marmor. That was also the admission of Crone, a deck hand on the Marmor. There was thus a clear violation of the starboard hand rule.

■ Now the Marmor attempts to find fault with the navigation of the Russell in that Malm testified that just prior to the collision he saw the tail end of the Russell tow swing over to the port side. But he admitted that that occurred when the Russell was about twenty-five or thirty feet from the can buoy. The channel in which the Russell No. 2 was navigating is two hundred feet in width. The Russell, on the starboard side, maintained a speed of about three or four miles an hour. When she was about five hundred feet from the buoy the Russell blew an alarm, but since the Marmor kept coming on, to avoid a collision the Russell stopped her engines when about seventy-five or one hundred feet from the can buoy. However, Parkhill, the Russell's captain, admitted that after he blew the one whistle signal he changed the course of the Russell No. 2 to starboard, when a thousand feet away from the buoy, and that at that time the tail of the tow went to port. Parkhill's testimony was not very

convincing and he admitted the channel on which he was coming was a new one to him. In consequence I must reach the conclusion that there was a change in course which contributed to the collision.

■ Thus it would appear that both vessels were at fault. Seaboard Great Lakes Corp., owner of the barge National, is entitled to a decree against both the Marmor and the Russell No. 2, and in the second libel, Coastwise Barges, Inc., owner of the barge Coastwise No. 2, is entitled to a decree against both tugs.

Concurrently herewith appropriate findings of fact and conclusions of law will be filed.